IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EXELON BUSINESS SERVICES COMPANY, LLC  ) ) ) | |
| Plaintiff,  ) ) | Case No.: 1:16-cv-00611 |
| v.  ) ) | Hon. Robert M. Dow, Jr. |
| PELCO STRUCTURAL, LLC  ) ) | |
| Defendant.  ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM**

NOW COMES Defendant/Counterplaintiff, PELCO STRUCTURAL, LLC ("Pelco"), by and through its attorneys, FRANCO & MORONEY, LLC, and in response to the motion of Plaintiff/Counterdefendant EXELON BUSINESS SERVICES COMPANY, LLC ("Exelon") to dismiss its Counterclaim pursuant to FED. R. CIV. PROC. 12(b)(6) and 12(f), states as follows:

**INTRODUCTION**

This is a breach of contract action by Exelon seeking damages for allegedly defective goods supplied by its vendor, Pelco. Exelon moves to dismiss Pelco's Counterclaim primarily on the grounds that it duplicates Pelco's affirmative defenses and is a "mirror image" of Exelon's breach of contract claim.

While there is some authority for the proposition that a counterclaim which is a "mirror image" of an affirmative claim should be stricken as duplicative, the facts of this dispute show that this rule does not apply here. Both Counts of Pelco's counterclaim raise issues and seek relief which are not raised or contemplated by Exelon's claim. Therefore, Pelco's claims constitute a proper counterclaim under Federal procedure and should not be dismissed.

**FACTUAL BACKGROUND**

Pelco agreed to supply Exelon with sixty-four (64) conductor arms for Exelon's Illinois Tollway Project (Dkt. #15, Answer, ¶19). One of the arms failed (Dkt. #15, Answer, ¶22). Following Exelon's testing, Pelco provided fourteen (14) replacement arms (Dkt. #15, Answer, ¶26). Exelon tested the replacement arms and found that they had "relief-cut welds" which were allegedly "not in accordance with the original specifications for the project." (Dkt. #15, Answer, ¶27). Exelon then found a new supplier for all 64 arms (Dkt. #15, Answer, ¶32-33), and seeks to recover the entire cost of same, in excess of $3 million, from Pelco (Dkt. #15, Answer ¶40). As such, the central issue is whether the conductor arms met the written specifications.

Pelco asserts two claims to relief in its Counterclaim. In its first claim, Pelco seeks a declaration that the arms provided did not use "miter joints" which the contract specifications prohibited (Dkt. #15, Counterclaim, ¶18), but were rather "tapered joints," which are expressly allowed by the specifications (Dkt. #15, Counterclaim, ¶19). Pelco asks this Court to determine whether the supplied joints were either in compliance with, or in substantial compliance with the contract specifications (Dkt. #15, Counterclaim, ¶¶28a.-b.), or were accepted by Exelon despite any alleged non-conformance (Dkt. #15, Counterclaim, ¶¶28c.-d.).

In Count II, for promissory estoppel, Pelco alleges that the initial contract only required that the arms have "partial penetration welds." (Dkt. #15, Counterclaim, ¶30). After the arm failure, Pelco changed its manufacturing process as a result of Exelon's representations, to provide "full penetration welds." (Dkt. #15, Counterclaim, ¶¶31-32). Based on Exelon's representations, this change would have resolved any issues with the alleged non-conformities, and it would not have made this change without those representations. (Dkt. #15, Counterclaim,

¶33, 41). Pelco seeks the costs it incurred in making those changes, which Exelon did not accept or pay for despite its representations.

## APPLICABLE STANDARD

Because a motion to dismiss a counterclaim under FED. R. CIV. PROC. 12(b)(6) and 12(f) tests its legal sufficiency rather than its merits, a counterclaim should be dismissed on motion only if the facts alleged "would not entitle it to judgment under any circumstances." *KRW Sales, Inc. v. Kristel Corp.,* 154 F.R.D. 186, 187 (N.D. Ill. 1994) (Conlon, J.). Exelon agrees. Dkt. #21, at 4.

As the court in *Cincinnati Specialty Underwriters Ins. Co. v. DMH Holdings, LLC,* 2013 WL 683493 at *4 n. 2 (N.D. Ind., Feb. 22, 2013), counterclaims may be stricken as redundant according to the following standard:

> A counterclaim for declaratory relief may be dismissed as redundant where "there is complete identity of factual and legal issues between the complaint and the counterclaim." Dismissal is justified in such cases on the theory that the counterclaim will become moot upon disposition of the complaint. Considering the difficulty in determining whether a declaratory judgment counterclaim is in fact redundant prior to trial, however, authorities suggest that a court should dismiss such counterclaims only when there is no doubt that they will be rendered moot by adjudication of the main action.

*Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust,* 674 F. Supp. 2d 562, 566 (D. Del. 2009) (internal citations omitted). In other words, if there is precise redundancy the Counterclaim is subject to dismissal. Where there is any difference in the Counterclaim, it stands as a proper pleading.

3

**ARGUMENT**

**I. COUNT I IS NOT DUPLICATIVE OF PLAINTIFF'S COMPLAINT AND IS A PROPER DECLARATORY REQUEST.**

Exelon seeks dismissal of Count I because it allegedly "duplicates" the relief sought in Exelon's breach of contract count. (Dkt. #21, at 4). But factually, that is not true. Apart from Exelon not seeking declaratory relief, Pelco's First Claim seeks an adjudication of a very specific and technical fact which Exelon does not raise–did the initially supplied arms constitute "miter joints," which did not meet contract specifications or "tapered joints," which are conforming? Nothing in Exelon's factual background or its single Count I raises this issue. As such, it cannot be said that "there is complete identity of factual and legal issues between the complaint and the counterclaim." *Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust, supra,* 674 F. Supp. 2d at 566.

Plaintiff's authorities on the "duplicativeness" involve fact patterns where the counterclaims were clearly or admittedly the "mirror image" of the complaint. In *Green Bay Packaging, Inc. v. Hoganson & Assocs., Inc.,* 362 F. Supp. 78, 82 (N.D. Ill. 1973), Judge Bauer confirmed the identity of the complaint and counterclaim in the following language:

> The plaintiff's complaint seeks declaratory relief as to the contractual rights of the parties, namely a declaration as to whether the plaintiff is liable to defendants for commissions on sales after January 1, 1971. *The defendants in Counts I and III of the counterclaim request this Court to determine the identical issue from the defendants' perspective*. It is clear to this Court that Counts I and III of the counterclaim merely restate an issue already before this Court. That issue will be determined by the litigation of the instant complaint. It is well settled that such repetitious and unnecessary pleadings should be stricken.

362 F. Supp. at 82 (emphasis added). Likewise, in *Arvegenix, LLC v. Seth,* 2014 WL 985390 (C.D. Ill. Mar. 13, 2014), Defendant *admitted* that his counterclaim sought the same relief as the complaint:

4

> *Defendants argue in response to the Motion to Dismiss that Counterclaim X is virtually identical to Claim X by Plaintiff, but this actually dooms Defendants' claim*. Plaintiff's claim is a typical declaratory judgment claim, seeking only to know if it has any obligations at all, to clear up any uncertainty of its contractual obligations, and not alleging any substantive claim or seeking relief beyond a declaration of rights and relationships. Further, courts have dismissed declaratory judgment claims that merely seek a declaratory judgment from the opposite perspective, as they are redundant.

2014 WL 985390 at *4 (emphasis added). And in *FDIC v. OneBeacon Midwest Ins. Co.,* 883 F. Supp. 2d 754 (N.D. Ill. 2012) (Grady, J.), an insured's counterclaim seeking a declaration of coverage under a fidelity bond was found to be duplicative of the insurer's request for a declaration that there was coverage.

The factual issue presented in Pelco's Counterclaim is nowhere presented in Exelon's Complaint. Rather than an action for damages, Pelco seeks this Court to review the specification and find that the product produced by Pelco conformed or substantially conformed to the written specification. Moreover, even if the Court views these pleadings as presenting some overlap, the best practice under the Federal authorities is not to dismiss a counterclaim as duplicative at an early stage:

> *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE § 1406 (2d ed. 1990) (citing *Leach v. Ross Heater & Mfg. Co.,* 104 F.2d 88, 91–92 (2d Cir.1939) ("While it may turn out at trial that a decision on the merits of the plaintiff's bill will dispose of the controversy between the parties completely and render declaratory judgment unnecessary ... we are of the opinion that it was error to strike out the counterclaim at so early a stage.")); *see also Jungersen v. Miller,* 125 F. Supp. 846, 847 (N.D. Ohio 1954) ("[T]he best and most sensible time to determine [whether the asserted counterclaim presents new issues] is at the time of trial. No possible harm can result from the delay."); *Iron Mountain Sec. Storage Corp. v. American Specialty Foods, Inc.,* 457 F. Supp. 1158, 1162 (E.D.Pa.1978) (declining to dismiss counterclaim as superfluous in action concerning interpretation of contract because defendant had a right to seek judgment declaring that its interpretation of the contract was the correct one).

5

*Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust, supra,* 674 F. Supp. 2d at 566, n.25. This is particularly important advice in a case such as this which is a bench trial. Any potential confusion of the jury resulting from the presence of arguably duplicative pleadings is simply not a concern here.

Finally, the fact that Pelco may not be accruing ongoing damages as a result of Exelon's determination that the arms were non-conforming does not bar this Court from exercising its discretion to hear the request for a declaration stated in Count I. It is well established that a party to a written contract may properly seek an interpretation of a written instrument by means of a declaratory judgment. *Westlands Water Dist. v. Dept of the Interior, Bureau of Reclamation,* 805 F. Supp. 1503, 1506 (E.D. Cal. 1992). Further, "nothing in the Declaratory Judgment Act prohibits a court from deciding a purely legal question of contract interpretation which arises in the context of a justiciable controversy presenting other factual issues. The Act specifically states that the court 'may declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought.*' 28 U.S.C. § 2201." *Kunkel v. Continental Cas. Co.,* 866 F.2d 1269, 1276 (10th Cir. 1989) (emphasis added to statutory citation in original). Thus, where the count for declaratory judgment is accompanied by other causes of action, there is less concern about a request for declaratory relief being improper and not a proper substitute for another cause of action, such as for breach of contract or negligence. *See generally, General Motors Acceptance Corp. v. Hartigan Cadillac, Inc.,* 1990 WL 16295, at *3 n. 2 (N.D. Ill., Jan. 30, 1990) (Holderman, J.), *distinguishing, Cunningham Bros., Inc. v. Bail,* 407 F.2d 1165 (7th Cir. 1969).

In *AT&T Capital Services, Inc. v. Shore Financial Services, Inc.,* 2010 WL 2649874 (N.D. Ill., June 30, 2010) (Lefkow, J.), the court denied a motion to dismiss a counterclaim

6

seeking a declaration that a lessee was obligated to return certain equipment under a lease, rejecting the argument that the availability of other remedies (such as for breach of contract) precluded declaratory relief. The court observed that FED. R. CIV. PROC. 57 states that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." 2010 WL 2649874 at *16. The court also referenced *Cunningham Bros., Inc. v. Bail, supra,* for the proposition that "a declaratory judgment action should not be dismissed solely because a more traditional remedy is available." *Id., quoting,* 407 F.2d at 1169.

*Arvegenix, LLC v. Seth,* 2014 WL 985390 (C.D. Ill., Mar. 13, 2014) is distinguishable because counterclaim defendants asserted declaratory relief in lieu of other remedies, such as for breach of contract. As the court put it, "Defendants could have filed a claim for breach of contract if they believed Plaintiff was obligated to take or refrain from particular action, and could have sought damages or injunctive relief. The remedy from such a claim would be a more effective alternative to a declaratory judgment that simply declares Plaintiff to have contractual obligations." 2014 WL 985390 at *3. The line of cases Pelco cites–where declaratory relief is requested along with other remedies, is more applicable and supports denying the Motion.

All of these authorities indicate that the presence of other remedies–such as for breach of contract or promissory estoppel damages (Counterclaim, Second Claim to Relief), do not preclude this Court from hearing the request for declaratory relief stated in Count I. The fact that many declaratory actions relate to potential damages and expenses to be incurred in the future does not mean that this is the only situation in which the Declaratory Judgment Act can be invoked. Pelco's claim for declaratory relief serves a purpose by asking for a fact-specific determination which Exelon does not ask this Court to make–whether the initially supplied arms constitute "miter joints," which did not meet contract specifications or "tapered joints," which

did.  A determination on this point will materially advance this litigation.  It may provide the basis for a disposition by motion per Rule 57 without the need for a trial, which means that the request for declaratory relief is useful and expedient.

## II. PELCO'S SECOND CLAIM IS NOT DUPLICATIVE AND STATES A CAUSE OF ACTION FOR PROMISSORY ESTOPPEL.

Exelon seeks dismissal of Pelco's second claim for promissory estoppel, both because it allegedly duplicates the Complaint and because a promissory estoppel count cannot exist together with a dispute over a written contract.  Neither point is well taken.

On the question of duplication, Pelco refers this Court to the points and authorities in Argument I., *supra*.  Exelon's complaint says nothing about the subject of promissory estoppel, which is whether Pelco relied on Exelon's representations in re-manufacturing the arms, only to have them subsequently rejected by Exelon.  Moreover, Pelco is seeking damages it incurred in re-manufacturing the arms, which is relief not contemplated anywhere in Exelon's Complaint.  Duplication is not present in this cause of action.

The Illinois Supreme Court made it clear in *Newton Tractor Sales, Inc., v. Kubota Tractor Corp.,* 233 Ill.2d 41, 52-56 (2009) that promissory estoppel is a cause of action in Illinois, not merely a defense.  The elements are that (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on the promise, (3) plaintiff's reliance was expected and foreseeable by plaintiff, and (4) plaintiff's reliance was to its detriment.  *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill.2d 281 (1990).  "Promissory estoppel may be invoked in both contractual and non-contractual settings.  *Decker v. Anderson Consulting,* 860 F. Supp. 1300, 1309 (N.D. Ill. 1994) (Alesia, J.), *citing, Geva v. Leo Burnett Co.,* 931 F.2d 1220 (7th Cir. 1991); *Falk v. U.H.H. Home Servs. Corp.,* 835 F. Supp. 1078 (N.D. Ill. 1993).

Exelon argues that Pelco cannot assert promissory estoppel against it because the parties' relationship is governed by a written contract. It cites *Prentice v. UDC Advisory Servs., Inc.,* 271 Ill. App. 3d 505 (1st Dist. 1995) for the rule that "[t]he law … does not allow for promissory estoppel where an express contract exists." Dkt. #21, at 6. But this truncated statement over-simplifies the discussion in *Prentice,* thereby leading Exelon to the wrong conclusion. What *Prentice* actually said on that subject, interpreting its prior authority, *Wagner Excello Foods v. Fearn, Int'l., Inc.,* 235 Ill. App. 3d 234 (1st Dist. 1992) was this:

> [W]e recognized in *Wagner* that a party may plead claims for breach of contract and promissory estoppel in the alternative. (*Wagner,* 235 Ill.App.3d at 235, … , citing *Quake Construction, Inc. v. American Airlines, Inc.* (1990), 141 Ill.2d 281, ….) In fact, several recent cases have held that *Wagner* does not necessarily preclude the alternative pleading of these claims. For example, in *Jackson National Life Ins. Co. v. Gofen & Glossberg, Inc., et al.* (N.D.Ill. July 15, 1993), No. 93 C 1539, 1993 WL 266548, 1993 U.S.Dist. Lexis 9569, the court rejected defendant's attempt to dismiss a claim for promissory estoppel as an alternative to a breach of contract pursuant to *Wagner.* Instead, the court allowed the pleading in accordance with *Quake Construction,* recognizing that "(t)o the extent that (plaintiff) ultimately will not be able to prevail under both theories of recovery, it need not embrace one over the other at this earlier stage of the pleadings." *Jackson National Life Ins. Co.,* 1993 WL 266548 at *3, 1993 U.S. Dist. Lexis 9569 at p. 9. See also *Hawthorne Partners v. AT & T Technologies, Inc., et al.* (N.D.Ill. 1993), 831 F. Supp. 1398, 1406.
>
> These cases, to be sure, are entirely consistent with the position of this Court in *Wagner* in allowing the assertion of alternative claims for breach of contract and promissory estoppel. However, once it is established, either by an admission of a party or by a judicial finding, that there is in fact an enforceable contract between the parties and therefore consideration exists, then a party may no longer recover under the theory of promissory estoppel. As noted above, promissory estoppel is a method to enforce promises that do not meet the requirements of consideration. It is not intended "to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract." (*Wagner,* 235 Ill. App. 3d at 237, … , quoting *Walker v. KFC Corp.* (9th Cir.1984), 728 F.2d 1215, 1220, as quoted in *General Aviation, Inc. v. Cessna Aircraft Co.* (6th Cir. 1990), 915 F.2d 1038, 1042.)) Thus, once consideration is found to exist, a party to the contract can no longer maintain an action for promissory estoppel where the performance which is said to satisfy the requirement of detrimental reliance is the same performance which supplies the consideration for the contract. Such was the case in *Wagner.*

9

271 Ill. App. 3d at 512 (parallel citations omitted). Thus, *Prentice* does not state that a party cannot plead promissory estoppel and breach of contract in the same action. It says they are allowed. *Prentice* establishes that the only time a party cannot assert promissory estoppel and breach of contract in the same action is when the detrimental reliance which forms the basis of the promissory estoppel, is the same performance which establishes consideration for the contract. *See, First Tennessee Bank Nat'l. Assoc. v. Lawyers Title Ins. Co.,* 282 F.R.D. 423, 428 (N.D. Ill. 2012) (Chang, J.), *citing, Prentice* and *Wagner.*

This rule does not apply here for two reasons. In the first place, Pelco is not seeking to recover for breach of contract and promissory estoppel (although that alternative pleading would be permitted if Pelco had chosen to do so). Instead, in its Counterclaim, Pelco asserts only promissory estoppel, not breach of contract. In the second place, Pelco is asserting as detrimental reliance its re-manufacturing of the arms based on the representations of Exelon that such conduct would satisfy the contract. This detrimental reliance is entirely separate from the conduct constituting consideration for the contract upon which Exelon has brought suit. Under the rule of *Prentice,* Pelco in Count II asserts promissory estoppel as a method "to enforce promises that do not meet the requirements of consideration" (271 Ill. App. 3d at 512), and is thus entirely appropriate.

Moreover, as explained in *DeGeer v. Gillis,* 842 F. Supp.2d 1055, 1060 (N.D. Ill. 2012) (Bucklo, J.), if an express contract governs the parties' relationship <u>and there is no issue of consideration</u>, then there is "no gap in the remedial system for promissory estoppel to fill." But here, there is a question of consideration for the additional work at issue in Count II. Pelco seeks the recovery of all of the manufacturing costs which it incurred in an attempt to meet those demands–and for which Exelon never paid. Not allowing recovery of these costs and dismissing

10

this count would leave a "gap in the remedial system." As such, promissory estoppel is appropriate.

WHEREFORE, Defendant/Counterplaintiff PELCO STRUCTURAL, LLC, respectfully requests this Honorable Court to deny the motion of Plaintiff/Counterdefendant EXELON BUSINESS SERVICES COMPANY, LLC ("Exelon") to dismiss its Counterclaim pursuant to FED. R. CIV. PROC. 12(b)(6) and 12(f).

Dated: April 19, 2016

Respectfully submitted,

PELCO STRUCTURAL, LLC

*/s/Robert J. Franco*
One of its attorneys

Robert J. Franco
Christopher M. Cano
Franco & Moroney, LLC
500 West Madison St., Suite 2440
Chicago, Illinois 60661-2510
312-469-1000
312-469-1011 – fax
robert.franco@francomoroney.com
chris.cano@francomoroney.com

11