**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EXELON BUSINESS SERVICES COMPANY, LLC, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:16-cv-00611 |
| v. | ) ) | Judge Robert M. Dow |
| PELCO STRUCTURAL, LLC, | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF EXELON BUSINESS SERVICES COMPANY, LLC'S REPLY IN
SUPPORT OF MOTION TO DISMISS AND/OR STRIKE
DEFENDANT'S COUNTERCLAIM**

**I.     Exelon's Complaint Raises (and Will Necessarily Resolve) the Exact Issue
Presented by Pelco's Counterclaim for Declaratory Judgment.**

Pelco contends in its Opposition Brief that its declaratory judgment count is not
duplicative of Exelon's breach of contract claim because it seeks determination of a fact not
raised by Exelon's Complaint. This is not true. As expressly stated in Pelco's Opposition brief, it
seeks a declaration as to whether "tapered joints" found on Pelco's conductor arms conformed to
the Project Specifications.  (Opp. Brief at 4.)  Where Pelco uses the term "tapered joint," Exelon
uses the term "relief-cut-weld," but they both refer to the same thing. Indeed, Exhibit D to
Pelco's Counterclaim is a drawing of what Pelco refers to as a "tapered joint," (Counterclaim, ¶
19), but the drawing is actually labeled "relief cut method." Thus, "relief-cut-weld" and "tapered
joint" are synonymous in this action.

Exelon alleges in its Complaint that Pelco breached the contract in part because the
conductor arms had relief-cut-welds and relief-cut-welds "were not in accordance with the
agreed upon specifications for the project and had not been approved by Exelon." (Complaint, ¶

1

27.)   Thus, in adjudicating Exelon's breach of contract claim, this Court will need to determine whether relief-cut-welds (or tapered joints, as Pelco now calls them) conformed to the Project Specifications.   As in *Green Bay Packaging, Inc.*, Pelco's declaratory judgment claim does nothing more than ask this Court to determine the identical issue from Pelco's perspective and therefore "merely restates an issue already before this Court."   *Green Bay Packaging, Inc. v. Hoganson & Assocs., Inc.,* 362 F. Supp. 78, 82 (N.D. Ill. 1973). As the Court in *Green Bay* found, "such repetitious and unnecessary pleadings should be stricken." *Id.* at 82. Because the redundant nature of Pelco's declaratory judgment counterclaim is clear from the outset, there is no point in deferring a decision until later in this case. Dismissing or striking the counterclaim now will preserve judicial resources and streamline this litigation.

In addition, Pelco's claim that a ruling in its favor on its declaratory judgment count could lead to an early resolution of this case is also not correct.  Even if this Court were to find that relief-cut-welds were not *per se* disallowed by the Project Specifications, it still needs to determine whether the actual arms supplied by Pelco were suitable for their intended use.  As the Complaint alleges, testing of the original and replacement arms supplied by Pelco revealed that they failed to meet the necessary weld penetration levels. (Complaint, ¶ 30.)  In other words, even if the Project Specifications allowed for Pelco's relief-cut-weld/tapered joint design, which the Complaint disputes, there remains the question of whether Pelco properly followed that design in the manufacture of the arms at issue. The Complaint contends that Pelco did not.  (*See, e.g.*, Complaint, ¶¶ 28-30.)  Pelco's declaratory judgment count therefore serves no useful purpose in this case.

Finally, Pelco relies upon a string of cases for the proposition that a declaratory judgment count is not improper simply because the party asserting the declaratory count (here,

Pelco) could have asserted a breach of contract claim instead. (Opp. Brief at 6.) This proposition is wholly irrelevant to the case at hand. Exelon does not contend that Pelco should have brought a counterclaim for breach of contract instead of declaratory relief. Pelco has no basis to assert a breach of contract claim either. As laid out above, Exelon contends that Pelco's declaratory judgment count should be stricken because it merely seeks the opposite effect of Exelon's already asserted breach of contract claim. This Court should decline to exercise jurisdiction over Pelco's declaratory judgment counterclaim.

## II. Pelco's Promissory Estoppel Claim Arises From the Parties' Contractual Obligations and Therefore is Barred as a Matter of Law.

Pelco's Opposition brief seeks to dispute a well-established proposition of law: that a claim for promissory estoppel will not lie where an express contract governs the dispute at issue. Pelco misreads the law to say that a party cannot plead both promissory estoppel and breach of contract; rather, it must pick one and Pelco has picked promissory estoppel. (Opp. Brief at 10: "Instead, in its Counterclaim, Pelco asserts only promissory estoppel, not breach of contract.") To the contrary, the law in Illinois plainly bars a claim for promissory estoppel in the face of an express contract. While a party can initially plead promissory estoppel and breach of contract *in the alternative*, once the contract is established, a claim for promissory estoppel fails as a matter of law. *Prentice v. UDC Advisory Servs., Inc.*, 271 Ill. App. 3d 505, 512 (Ill. App. Ct. 1995) (once an enforceable contract is established, a party may no longer recover under the theory of promissory estoppel); *see also DeGeer v. Gillis,* 842 F. Supp. 2d 1055, 1060 (N.D. Ill. 2010) (dismissing plaintiff's claims for promissory estoppel and *quantum meruit* in light of the undisputed existence of an express contract governing the parties' relationship) (cited by Pelco in Opp. Brief at 10). Here, Pelco has admitted to the existence of an express contract governing this dispute. (Answer, ¶ 13, 19.) That contract contains an express integration clause.

(Complaint, Ex. A, § 30.1.)  Pelco's promissory estoppel claim is therefore barred.  *See Prentice, supra.*

Pelco next contends that its supply of replacement arms was somehow separate and apart from the parties' original contract.  But the parties' contract expressly covers the supply of replacement arms in a non-conforming situation.  (Complaint, Ex. A, § 4.2.1.) Indeed, in return for payment under the contract, Pelco agreed to produce conforming conductor arms. If its original conductor arms were non-conforming, then Pelco had the option of remanufacturing those arms in an effort to cure. Thus, the detrimental reliance underpinning Pelco's promissory estoppel claim is the same underpinning the parties' contract.  Further proof that the parties' contract governs Pelco's remanufacturing (i.e., cure) efforts is the fact that Pelco relies upon the contract's language to support its promissory estoppel count:

> **By virtue of the Contract** and the statement of Exelon, Pelco had the right to rely on Exelon that it would use the new Pelco conductor arms ... Exelon…breached Pelco's Contract by Exelon contracting with a new supplier for the production and supply of conductor arms.

(Counterclaim, Count II, ¶ 34, emphasis added.)  Count II of Pelco's Counterclaim is clearly governed by an express contract.

Pelco's claim for promissory estoppel is also not plausible on its face, as required by *Twombly. See  Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955) (A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). Pelco's claim rests on the premise that a right to cure means that the non-breaching party has not only promised to accept the remanufactured goods, whether conforming or not, but also promised to pay for the cost to cure.  That is not the law. Indeed, Pelco fails to cite a single case supporting

4

this theory.

Moreover, it is not what the parties' contract provides. The parties' contract merely afforded Pelco the opportunity to remanufacture its conductor arms in a manner that conformed to the contract before Exelon could pursue a breach of contract claim. If Pelco had to change its manufacturing process in an attempt to get it right, then any costs associated therewith fell on Pelco.[1] Pelco does not allege that the contract allowed Pelco to pass its costs to cure on to Exelon. Nor has Pelco alleged any facts that would support a verbal "side" agreement to this effect.[2] Pelco's attempt to turn its obligation to cure into a claim for damages is belied by the contract language and does not satisfy the plausibility standard of *Twombly*.

Finally, Pelco has already argued in defense of Exelon's breach of contract claim that Exelon failed to afford Pelco its contractual right to cure. Pelco raises this as a defense in its answer and in its affirmative defense of "Failure of Condition Precedent." Thus, whether or not Exelon complied with its own contractual obligations will be adjudicated in connection with its breach of contract claim. Thus, like Pelco's declaratory judgment claim, Pelco's promissory estoppel claim is redundant and unnecessary. For each of these independent reasons, Pelco's Count II for Promissory Estoppel fails to state a claim as a matter of law and should be dismissed.

### III.    Conclusion.

For the reasons set forth above and in Exelon's Motion to Dismiss, Exelon respectfully requests that the Court grant its Motion to Dismiss and/or Strike Pelco's Counterclaim in its entirety.

---

[1] Exelon's Complaint asserts that Pelco still did not get it right, which is why Exelon has sued Pelco for breach of contract.

[2] Any verbal agreement to this effect would, of course, be barred by the contract's express integration clause, but Pelco does not even allege such a promise was made.

Dated: May 3, 2016                          Respectfully submitted,

                                            **EXELON BUSINESS SERVICES COMPANY,
                                            LLC**

                                            /s/ Tracy A. Hannan
                                            Tracy A. Hannan

Tracy A. Hannan
ARDC # 6281834
Assistant General Counsel
Exelon Corporation
10 S. Dearborn St., 49th Floor
Chicago, Illinois 60603
Telephone: 312-394-8994
Facsimile: 312-394-8322
Tracy.Hannan@exeloncorp.com

## <u>CERTIFICATE OF SERVICE</u>

      I, the undersigned, an attorney, hereby certify that I served the above and foregoing **EXELON BUSINESS SERVICES COMPANY, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS AND/OR STRIKE DEFENDANT'S COUNTERCLAIM** by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system, on this the 3rd day of May 2016.

<div style="margin-left:40%">

/s/ Tracy A. Hannan           

Tracy A. Hannan

*Attorney for Exelon Business Services Co., LLC*

</div>