UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EXELON BUSINESS SERVICES COMPANY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> PELCO STRUCTURAL, LLC, <br><br> Defendant. | Case No.: 1:16-cv-00611 <br><br> Hon. Robert M. Dow, Jr. |

**PLAINTIFF EXELON BUSINESS SERVICES COMPANY, LLC'S REPLY TO
ITS MOTION TO ADMIT EXHIBITS 529 AND 530 FOR IMPEACHMENT PURPOSES
AGAINST PELCO STRUCTURAL, LLC'S TRIAL WITNESS PHIL ALBERT**

Exelon Business Services Company, LLC ("Exelon") submits this reply in support of its motion (ECF No. 153) to admit for impeachment purposes only the pleadings filed by Pelco Structural, LLC ("Pelco") and its former president and trial witness, Phil Albert, in their lawsuit against each other, *Phil B. Albert v. Pelco Structural, LLC*, Case No. CJ–19–439, District Court of Rogers County, Oklahoma ("Oklahoma lawsuit").[1]

**INTRODUCTION**

At the time Pelco told this Court about Mr. Albert's good reputation and character (Tr. 869:12–24, 958:5–8; Dep. 22:12–25:5, 39:17–43:14, 105:7, ECF No. 133), the whole truth was that Pelco had fired him for stealing, embezzling, and defrauding it of more than $7.4 million and that his sworn deposition testimony was, at best, inconsistent. Stunningly, Mr. Albert now concedes after his deposition and trial that Pelco fired him because he told Pelco management about inspection problems and yet another $15–20 million pole failure. But Pelco wants to

---

[1] Exhibits 529 and 530 are, respectively, Mr. Albert's petition filed against Pelco and Pelco's answer and counterclaim filed against Mr. Albert. ECF Nos. 153-1, 153-2.

1

withhold this evidence and asks this Court to rely blindly on Mr. Albert's unimpeached deposition transcript. The purpose of trial is to determine where the truth lies, and Pelco and Mr. Albert's pleadings in their Oklahoma lawsuit should be admitted as impeachment evidence in determining the true facts, especially as this Court held the record open for additional evidence. Pelco's incorrect legal standards and improper accusations against Exelon[2] cannot, and should not, barricade the whole truth from this Court.

## ARGUMENT

I. **This Court has broad discretion to admit additional evidence after trial based on its supervisory trial authority—not Federal Rule of Civil Procedure 59.**

As Exelon's motion established, district courts have broad discretion to admit additional evidence after trial based on their supervisory trial authority. Mot. 2, ECF No. 153; Fed. R. Evid. 611; *Johnson v. Hix Wrecker Serv., Inc.*, 528 F. App'x 636, 639 (7th Cir. 2013) ("the district court appropriately exercised its supervisory trial authority") (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331 (1971) (motion "to submit additional proof is addressed to [trial judge's] sound discretion")).

In response, Pelco relies incorrectly on Federal Rule of Civil Procedure 59. Resp. 3, 8–9. But Exelon is not moving for a new trial; it is moving to admit additional evidence. Mot. 1–7. And contrary to Pelco's response, Rule 59 is not what "confers that power" or "what supported the *Johnson* decision." Resp. 8–9. In *Johnson*, the district court exercised its supervisory trial authority to admit additional evidence after the bench trial on the weight of plaintiff's vehicle.

---

[2] Pelco's accusations against Exelon (Resp. 1–2, 8, ECF No. 158) are equally improper and baseless. *See Adams Labs., Inc. v. Jacobs Eng'g Co.*, 761 F.2d 1218, 1226 (7th Cir. 1985) ("If the wealth and size of a corporation are not at issue, counsel is bound to refrain from making reference to such size and wealth, or bear the risk of an unfavorable appellate reception."); *Gonzalez v. Volvo of Am. Corp.*, 752 F.2d 295, 298 (7th Cir. 1985) (same; "counsel's conduct was grossly immoderate.").

2

528 F. App'x at 639. Neither the Seventh Circuit's nor the district court's decisions stemmed from newly discovered evidence under Rule 59 as Pelco claims. Resp. 8. Instead, on defendant's motion to strike, the district court applied "'the normally predominant principle of utilizing all rational means for ascertaining truth.'" Entry Reopening Liability Phase of Trial at 3, ECF No. 158 (S.D. Ind. Aug. 21, 2012) (quoting *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996)), *available at* https://ecf.insd.uscourts.gov/doc1/07313523965; *Johnson*, 528 F. App'x at 639 ("It is precisely the function of a judicial proceeding to determine where the truth lies"; "[d]istrict courts conduct civil trials with an eye toward discovering the truth.").

Under this supervisory trial authority, this Court should also exercise its broad discretion to consider Pelco and Mr. Albert's pleadings as impeachment evidence in its search for the whole truth.

II. **Pelco and Mr. Albert's pleadings are admissible impeachment evidence under Federal Rule of Evidence 806.**

As Exelon's motion also explained, Federal Rule of Evidence 806 broadly allows impeachment evidence attacking Mr. Albert's credibility, regardless of when it occurred or whether he had an opportunity to explain or deny it. Mot. 3. Under Rule 806, "the credibility of the declarant may be attacked by any evidence which would be admissible for those purposes *if declarant had testified as a witness*." Fed. R. Evid. 806 (emphasis added). The advisory committee's notes explain why this impeachment evidence is allowed, and in so doing make clear this evidence may involve specific conduct (Rule 608) and inconsistent statements (Rule 613):

> The declarant of a hearsay statement which is admitted in evidence is in effect a witness. His credibility should in fairness be subject to impeachment and support as though he had in fact testified. See Rules 608 and 609 … Rule 613(b).
> ….
> [T]he impossibility arises from the total absence of anything resembling a hearing at which the matter could be put to him.

3

Fed. R. Evid. 806, advisory committee's notes (citing Fed. R. Evid 608, 609, 613).

> **A.     Federal Rule of Evidence 806 modifies Rules 608 and 613 to allow extrinsic impeachment evidence.**

Pelco claims inaccurately that Rules 608 and 613 should override Rule 806 and prohibit extrinsic evidence or "paper impeachment." Resp. 2–7.[3] But as Rule 806, the advisory committee's notes, and common sense reveal, it would be impossible to inquire on cross-examination of an absent witness (Rule 608) or give an absent witness on cross-examination the opportunity to explain or deny an inconsistent statement (Rule 613). Thus, "Rule 806 applies, of course, when the declarant has not testified [at trial] … and resort to extrinsic evidence may be the only means of presenting such evidence." *United States v. Friedman*, 854 F.2d 535, 570 n.8 (2d Cir. 1988) (district court properly admitted extrinsic impeachment evidence); *United States v. Cotton*, 823 F.3d 430, 438 (8th Cir. 2016) (same; "[t]hough this is an unusual pattern for the introduction of such [extrinsic evidence], the basic outcome was that the jury was able to consider the substantive evidence, as well as the context of prior consistent and inconsistent statements that bore on the truth of that evidence").

Just like the Second and Eighth Circuits, Judge Rovner has also held in this District that Rule 806 modifies the other rules to allow extrinsic impeachment evidence:

> Rule 806 should be read as modifying the otherwise-applicable Rule (in this case, Rule 608) to the extent of permitting extrinsic evidence. Otherwise, the attacking party could employ this form of attack only if the out-of-court declarant took the witness stand, or perhaps if he were unavailable, and it is unfair thus to restrict the attack: The impeaching party ought not to be put to the burden of calling the declarant to the stand even if he is available, since his adversary has adduced the statement which gave rise to the need for impeachment.

*United States v. Finley*, No. 87 CR 364–1, 1989 WL 58223, at *2 n.1 (N.D. Ill. May 19, 1989),

---

[3] As this Court knows, *Newman v. Gaetz*, No. 08–C–4240, 2011 WL 320229 (N.D. Ill. Jan. 31, 2011), did not involve Rule 806 or impeachment of a hearsay declarant.

*aff'd*, 934 F.2d 837 (7th Cir. 1991) ("Impeachment was possible only by virtue of Fed. R. Evid. 806.").[4]

Pelco cites only *United States v. Saada*, 212 F.3d 210, 220 (3d Cir. 2000), which directly conflicts with all the authorities cited above and below. Resp. 7. Moreover, the Third Circuit's concerns about extrinsic evidence in *Sada* are not present here because: (1) no jury is involved; (2) no unfair surprise exists because Pelco knew and admits the improper conduct in its own pleading; (3) no witness was available at trial to impeach; and (4) no minitrial is required because, again, Pelco admits the improper conduct in its own pleading and Mr. Albert's inconsistent statements attack his credibility rather than the substantive truth. *Cf. Saada*, 212 F.3d at 222. Indeed, Pelco does not even object to the impeachment evidence under Rule 403 or any other ground, except Rules 608 and 613. Resp. 7.

As this record makes clear, Pelco and Mr. Albert's pleadings in their Oklahoma lawsuit are admissible impeachment evidence under Federal Rule of Evidence 806.

---

[4] Exelon has found no authority in the Seventh Circuit or this District to the contrary, and Pelco cites none. Resp. 1-9. Indeed, many authorities and commentators support this view. *Id.* (quoting Louisell & Mueller, 4 *Federal Evidence* § 501 (1980 ed.); *United States v. Uvino*, 590 F. Supp. 2d 372, 374 (E.D.N.Y. 2008) (Weinstein, J.) (admitting FBI 302s as extrinsic impeachment evidence "in order to attack the credibility of the alleged victims under Federal Rule of Evidence 806"); *Mitchell v. Modern Woodmen of Am.*, No. 10–CV–965, 2015 WL 13637160, at *10 (N.D. Ala. June 8, 2015) (admitting extrinsic impeachment evidence under Rule 806 and *Friedman*, 854 F.2d at 570); Wright & Miller, 30B *Fed. Prac. & Proc. Evid.* § 7054 (2020 ed.) (admitting extrinsic impeachment evidence under *Friedman*, 854 F.2d at 570, which "accords most closely with the spirit and intent of Rule 806"); Mueller & Kirkpatrick, 5 *Federal Evidence* § 8:138 (4th ed. 2014) ("the wiser reading of these provisions leads to the conclusion that impeachment of this sort should be allowed, *even though* normally such impeachment can proceed only on cross-examination. Necessarily the attack would take place by means of testimony describing bad acts, or documentary proof."); Saltzburg et al., *Federal Rules of Evidence Manual* § 806/02[3] (10th ed. 2011) ("we believe that bad act impeachment should be a permissible means of impeaching a hearsay statement"); Rothstein, *Federal Rules of Evidence* Rule 806 (3d ed. 2020) ("methods of impeaching credibility provided or implied in the Rules … will require a slight adjustment of those rules, as where it is provided that a form of impeachment can take place upon cross-examination only, as under Rule 608(b)").

### B. Mr. Albert's misconduct—stealing, embezzling, and defrauding more than $7.4 million—is proper impeachment evidence.

As its fallback, Pelco's response argues that its own pleading—a straightforward party-admission of a $7.4M fraud—is "evidence of nothing," "impeachment by innuendo," and "like an audience member throwing rotten fruit after the actor has left the stage." Resp. 7–8. It is unfortunate that Pelco tells an Oklahoma court one thing and this Court another. Contrary to Pelco's position, Oklahoma Rule 11 is clear that an attorney's signature certifies that "factual contentions have evidentiary support." 12 OK Stat. § 12–2011. Pelco's own pleading shows that it believes and admits Mr. Albert knowingly committed theft and fraud, and it cannot hide these serious facts from this Court, since "it is well-established in this circuit that the pleading in one proceeding is admissible and cognizable as an admission in another." *Walaschek & Assocs., Inc. v. Crow*, 733 F.2d 51, 54 (7th Cir. 1984); Fed. R. Evid. 801(d)(2) (party admission).[5]

Thus, Pelco's pleading in its Oklahoma lawsuit admitting Mr. Albert's misconduct is proper impeachment evidence. Ex. 530, ECF No. 153-2. As the Seventh Circuit has explained, "people generally regard acts such as stealing (and receiving and using stolen property) as acts that reflect adversely on a man's honesty and integrity." *Varhol v. Nat'l R.R. Passenger Corp.*, 909 F.2d 1557, 1567 (7th Cir. 1990) (citation omitted). In fact, such acts "'disclose a disregard for the rights of others which might reasonably be expected to express itself in giving false testimony whenever it would be to the advantage of the witness." *Id.* (citations omitted).

---

[5] Pelco mistakenly cites *United States v. Morrison*, 98 F.3d 619, 628 (D.C. Cir. 1996), which involved a complaint filed against a witness by someone else, and not the party's own pleading. The D.C. Circuit has also limited *Morrison*, holding that it prevents cross-examining a witness on "the mere *filing* of a complaint" rather than properly on "the *substance* of the complaint." *United States v. Whitmore*, 359 F.3d 609, 621 (D.C. Cir. 2004) (emphasis original).

C. **Mr. Albert's inconsistent statement—about another $15–20 million failure in January 2018—is proper impeachment evidence.**

As for Mr. Albert's petition in the Oklahoma lawsuit, Pelco claims it is not impeaching at all and entirely consistent with his sworn deposition testimony. Resp. 4. Pelco is mistaken. On February 9, 2018, Mr. Albert testified, as the president of Pelco who was responsible for all of its activities including risk management (Dep. 35:10–36:19), that Pelco only had two failures, one in 2012 and one in 2016:

> Q. How many projects do you recall where you had to replace a part?
> A. Two.
> Q. How many years apart were these incidents?
> A. One occurred in 2012; one occurred in 2016.
> …
> Q. Outside of those two jobs that you just referenced, do you know of any other occurrences of a failed part as it pertains to work that Pelco has done?
> A. No.
> …
> Q. Just to be complete, were there any other inspection issues in any other jobs that you are aware of outside of what's already been discussed?
> A. No.

Dep. Phil Albert at 129:20–133:3, ECF No. 133.

Contrary to his deposition and Pelco's position (Resp. 4), Mr. Albert's complaint admits that Pelco had yet another $15–20 million pole failure on January 1, 2018, more than a month before his February 9, 2018 deposition. Ex. 529 at 5–6, ¶¶ 32–36, ECF No. 153-1.[6] His petition explains that NextEra Energy reported the failure to Pelco in January 2018 (*id.* ¶ 32), he

---

[6] Pelco admits the failure specifically occurred on or about January 1, 2018, in its answer filed in the lawsuit for the failure. *Lone Star Transmission, LLC v. Pelco Structural, LLC*, No. 4:20-cv-00835, ECF No. 13 ¶ 13 (S.D. Tex. filed Apr. 30, 2010), *available at* https://ecf.txsd.uscourts.gov/doc1/179135941245.  It is again unfortunate that Pelco tells a Texas federal court one thing and this Court another, and denies here "whether Pelco was involved in a product failure in 2018." Resp. 2–3. Even so, the Court may consider Pelco's answer in deciding admissibility. Fed. R. Evid. 104(a) (preliminary question), 801(d)(2) (party admission).

communicated the failure to Pelco's senior management and principals (*id.* ¶ 33), and within weeks he caused Pelco to deliver replacements (*id.* ¶ 34). There is no question this reported January 1, 2018 failure and the delivery of replacements within weeks conflict with his February 9, 2018 deposition testimony—especially for the person responsible for all of Pelco's activities and its risk management. *See United States v. Lashmett*, 965 F.2d 179, 182 (7th Cir. 1992) ("inconsistent statements can severely undermine the credibility of a witness, by showing either a flimsy recollection of events or worse, a propensity to lie"); *United States v. Seymour*, 472 F.3d 969, 970 (7th Cir. 2007) ("An omission can be as dishonest as an outright lie").

That impeachment is critical here, where Exelon did not know of Mr. Albert's inconsistent statement at the time of his deposition or trial and could not have possibly cross-examined or designated his testimony on the inconsistency. Pelco points out that neither side designated at trial Mr. Albert's inconsistent testimony and he had no opportunity to explain it. Rep. 1, 4–5. But of course, Pelco did not designate testimony it knew was incorrect, and Exelon could not designate impeachment it did not know about until *after* Mr. Albert made the inconsistent statements. Fed. R. Evid. 806 advisory committee's note ("the inconsistent statement may well be a *subsequent* one, which practically precludes calling it to the attention of the declarant"); *see also* Fed. R. Evid. 102 ("These rules should be construed … to the end of ascertaining the truth").

Pelco also misstates the purpose of impeachment by an inconsistent statement. Resp. 2–3 (denying "these allegations" of "whether Pelco experienced product failure with another client"); *but see* n.6 above (admitting the failure). An inconsistent statement "casts doubt on a witness's reliability *no matter which version, if either, is true*. 'The attack by prior inconsistent statement is not based on the theory that the present testimony is false and the former statement true. Rather,

the theory is that talking one way on the stand and another way previously is blowing hot and cold[.]'" *United States v. Chaparro*, 956 F.3d 462, 478 (7th Cir. 2020) (citations omitted). That is why Exelon offers Mr. Albert's pleading in their Oklahoma lawsuit for impeachment purposes only and not as substantive evidence of the January 1, 2018 pole failure. Fed. R. Evid. 806.

> **D. Pelco and Mr. Albert's pleadings are proper impeachment evidence of Mr. Albert's bias, motive, and interest.**

Finally, Pelco's response ignores that the pleadings expose Mr. Albert's true bias, motive, and interest at the time of his deposition, which are always "material" and "never collateral." *United States v. Frankenthal*, 582 F.2d 1102, 1106 (7th Cir. 1978) ("Because of the importance of evidence of bias or interest, inquiry into the area is never collateral, and a witness' denial of the facts constituting bias or interest may be rebutted with extrinsic evidence."); *United States v. Scott*, 267 F.3d 729, 735 (7th Cir. 2001) ("The Federal Rules of Evidence do not consider bias a collateral issue").

Pelco and Mr. Albert's pleadings show that Mr. Albert slanted his testimony at the time of his deposition in favor of Pelco. After his termination as president, Mr. Albert then conceded in the Oklahoma lawsuit that Pelco had severe inspection issues and that the poles it supplied were defective in yet another $15–20 million pole failure. Indeed, Mr. Albert conceded that, after learning of the pole failure, he "advised [Pelco senior management] that he believed [Pelco] Structural had not met elements of the specification." Ex. 529 ¶ 37, ECF No. 153-1. Mr. Albert even admitted that Pelco terminated him because he told Pelco management of the inspection defects. *Id.* ¶ 38 ("Structural, through Pelco Industries, wrongfully terminated Albert's employment due to this reporting of the NextEra Claim.").

In reality, Mr. Albert was far more likely to testify at trial consistent with his complaint *against* Pelco than his deposition testimony for Pelco. But during trial, Pelco told this Court

about Mr. Albert's good reputation and character and chose to rely on his deposition testimony. Tr. 869:12–24, 958:5–8; Dep. 22:12–25:5, 39:17–43:14, 105:7, ECF No. 133. The whole truth was that Pelco had fired him for stealing, embezzling, and defrauding it of more than $7.4 million and that his deposition testimony was, at best, inconsistent, and at worst, wrong. And even still, Pelco clings to his deposition testimony, will not concede his damaged credibility, and tries to withhold this critical impeachment evidence from this Court. *See* Resp. 1–9; Proposed Facts ¶¶ 13, 14, 140, 148, ECF No. 156 (relying on Mr. Albert's deposition testimony); Tr. 869:12–15 ("Q: Your belief that Pelco could have manufactured the arms and delivered them comes solely from what Mr. Phil Albert said, correct? A: Essentially from what Mr. Phil Albert said, yes."). The reason is plain and simple: Mr. Albert's outright bias, motive, and interest to testify in favor of Pelco at the time of his deposition.

## CONCLUSION

For these reasons, Exelon Business Services Company, LLC requests that the Court grant its motion (ECF No. 153) and admit for impeachment purposes only the pleadings filed by Pelco Structural, LLC and its former president and designated witness, Phil Albert, in *Phil B. Albert v. Pelco Structural, LLC*, Case No. CJ–19–439, District Court of Rogers County, Oklahoma, which are attached to the motion as Exhibits 529 and 530.

Dated: June 30, 2020            Respectfully submitted,

**EXELON BUSINESS SERVICES COMPANY, LLC**

*/s/ Brian O. Watson*
Heather H. Harrison (#6296693)
Tracy A. Hannan (#6281834)
Assistant General Counsel
EXELON CORPORATION
10 S Dearborn St., 49th Floor
Chicago, Illinois 60603
Telephone: 312–394–8994
Facsimile: 312–394–8322
tracy.hannan@exeloncorp.com
heather.harrison@exeloncorp.com

Mariangela M. Seale (#6293433)
Brian O. Watson (#6304248)
Lauren Jaffe (#6316795)
Joy Anderson (#6320219)
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St, Ste. 2900
Chicago, Illinois 60602
Telephone: (312) 471–8700
Facsimile: (312) 471–8701
mseale@rshc-law.com
bwatson@rshc-law.com
ljaffe@rshc-law.com
janderson@rshc-law.com
www.rshc-law.com

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that these papers were filed and served on all counsel of record via the Court's CM/ECF electronic filing system on June 30, 2020.

<i>/s/ Brian O. Watson</i>

4812-9285-5489, v. 3